Thank you. Good morning. May it please the court. I'm Matt Adams with Northwest Immigrant Rights Project on behalf of Ms. Cabello and the putative class. This court's recent decision in NACA demonstrates that 8 U.S.C. 1252 A2B1 should not be read to strip Ms. Cabello and putative class members of any forum to obtain judicial review of an agency policy they allege is plainly contrary to the statute. Now, defendants maintain that the district court has no jurisdiction to review its policy governing U visa adjustment applications, regardless of the fact that there is no other forum in which to challenge this policy that directly impacts them. However, in NACA, this court held that 1252 A2B does not bar, quote, collateral challenges to defendants generally applicable policies and procedures, end quote. Now, NACA did foreclose plaintiff's argument that 1252 A2B does not apply outside the context of persons in removal proceedings. But it also clarifies that the statute nonetheless permits challenges to general policies and procedures, and that is precisely what is presented here. Can I ask you on this? So why do you think Ms. Cabello is not similarly situated to the one plaintiff in NACA whose adjustment of status had been denied, who the opinion refers to as P. Padada? Yes, the distinguishing factor in this case is that the applicant in NACA was able to, and under the statute, renew her adjustment application before the immigration court in removal proceedings. So under 1255 A, that applicant has the right to have the attorney general review and adjudicate her application, and therefore, it can be reviewed on a petition for review of that final order. So in contrast here, 1255 M prevents a unique adjudicatory system where only the secretary for the Department of Homeland Security has authority to adjudicate an adjustment for a U visa holder. And so unlike any other adjustment application, Ms. Cabello and class members cannot renew an application or ask an immigration judge to review any determination with respect to their denial of a U visa adjustment. So you're asking here, you know, essentially for a constitutional exception to 1252 A to B. Why couldn't you ask for a constitutional exception to 1255 M and in removal proceedings make the same argument, say we have a due process right there? Well, I believe that under our understanding of the courts holding in NACA, where it made clear that 1252 A to B does not preclude a challenge to a policy or procedure that consistent with that interpretation of the statute, our clients are able to proceed in district court. Now in NACA, this court held that they had to move forward and with a petition for review process, because that was a channeling provision and that it dovetailed nicely, but it relied again on the Supreme Court's holding in Reno versus CSS, where it found an exception, where it noted an exception where the procedures do not provide adequate review and said in those situations, they would not be required to follow those procedures. And that's precisely like this case. There is no adequate review under the procedures, so they don't need to go through that channeling process. So we're not arguing that 1252 A to B is unconstitutional as applied to our clients under NACA, because under NACA, it makes clear that it does not preclude a district court's jurisdiction. But in those cases, which admittedly is the vast majority of cases where an applicant can in fact obtain review through immigration court and then on a petition for review, they must be confined to that channeling process. But what would be, I mean, what is the, why wouldn't one read this to say, it is a channel, it's doing the same channeling, it's directing you to the petition for review process. There may be an impediment to raising this there, but you can raise a constitutional objection there, that what Congress was saying is if you want to raise this argument you're need to essentially wait and deal with it in the course of the petition for review process. I do, we do argue in the alternative that if the statute is read to completely foreclose any type of judicial review, then it is unconstitutional as applied to Ms. Cabello. But I think the point here is that the statute is a channeling provision, it's not a stripping provision. And therefore, in the context of a case where it cannot be channeled, then it doesn't apply to our client. So this doesn't mean the statute is unconstitutional, it means it's inapplicable because it doesn't channel the claim that's before the court. I mean, I guess one question I would have is, you know, are you relying on the part of NACA that applies to people who have not sought adjustment of status? Because that decision distinguished between those people who could potentially bring a collateral claim if it were ripe, and P. Padada whose claim was ripe but who was then channeled, and like P. Padada, Ms. Cabello was denied adjustment of status. And no, we're not relying upon the NACA decisions, how they distinguish the other applicants who had not yet applied. Our class is limited to those individuals who have both our name plaintiff and the proposed class focuses on individuals who have in fact applied for adjustment of status and therefore are subject to this policy. But again, the policy or the channeling provision focuses on limiting the review through the channel that's available. That provision would be inapplicable. As the Supreme Court held in Reno versus CSS, where it says there must be an adequate procedure. And here there clearly is no adequate procedure. Now, defendants have argued, I think similar to what the court has suggested here that, well, even if our clients don't have a shot at challenging the policy, they can change their argument and challenge the statute 1255M and how it limits the adjudication to just the Secretary of DHS instead of allowing the Attorney General to adjudicate their claim. But again, that's a separate constitutional statutory claim. What NACA made clear is that there is an avenue, district courts are not stripped of jurisdiction to review a policy that they contend violates the statute. And again, the court in NACA found that district court has jurisdiction. So it wasn't just saying or rather that 1252A2B does not strip a district court of jurisdiction. And that's the underlying holding that the district court was not stripped of jurisdiction by the statute. But NACA was referring to a different provision where I think you say it does give some form of judicial review, whereas here it gives exclusive review to the DHS Secretary. So the statutory provisions are different. And because of that, maybe you ultimately do get your day in court by maybe challenging that exclusive review process by the DHS Secretary. So isn't it ultimately you do get your day in court, maybe not in the way you want or in a timely way or the exact argument, but you do get to challenge it. But I guess to me, I don't think that's I guess I would push back on that because what we're saying is we shouldn't be challenging the constitutional application or whether the application of the statute is constitutional here because we can wait for another day and challenge whether 1255M, a separate provision, is constitutional as applied to them. The question is, is there an opportunity under the petition for a review process as laid out in 1252 to address this policy? And there is no opportunity, as defendants acknowledge, if we look at page seven of their answering brief, there's no opportunity for the immigration court to review the denial of an adjustment application when it's based upon a U visa. And again, this contrasts with all other forms of adjustment under 1255. So the question then is whether there's any relief available under 1252A2D. 1252A2D would only be applicable for those individuals who are able to present an adjustment application in removal proceedings because 1252A2D only restores jurisdiction over questions of law and constitutional issues for claims that were raised in immigration court, but because this claim cannot be raised in immigration court. And again, the Supreme Court's decision in Nasrallah makes clear that on a petition for review, the court of appeals can only entertain or only review those matters that were before the immigration court. And that's further consistent with the statute at 1252, which limits review on any petition for review to matters that are in the administrative record. So none of this is part of the underlying removal proceedings, and that's why it cannot be encompassed by the jurisdiction provision at 1252A2D, which restores jurisdiction to constitutional claims and questions of law. But again, that's only for matters that are before it based upon the underlying removal proceedings. And here, because of the unique provision of 1255 limiting only the Secretary of the Department of Homeland Security to review that matter, it's never going to be part of the underlying removal proceedings. And again, the final point I would make was simply that if this court were to find that notwithstanding the court's holding in NACA that 1252A2D forecloses all review of this adjustment provision, then it would be unconstitutional as applied to Ms. Cabello, both because it violates the separation of powers, which require the judicial branch to retain authority over determining issues of law, but also because it violates her procedural due process clause. And I would emphasize it is her procedural due process clause, not any substantive claim to due process. Defendants point to the Munoz decision, but of course that's in a posit that's dealing with a substantive due process claim. It's well settled that Ms. Cabello, who's been living here for years, who has lawful status, has due process. And the Supreme Court in St. Cyr has instructed that entirely precluding judicial review of pure questions of law creates constitutional questions. And of course, in Looper or Bright and SEC versus JARCC, this Supreme Court has recently reaffirmed that it is in fact the prerogative and the sole domain of the judiciary to decide these questions of law. So I would leave it at that. Now, if I may, I'll preserve my last minute and a half for rebuttal. Great. Thank you. Mr. Chen, whenever you're ready. Good morning, Your Honors. May it please the Court, I'm Chen from the United States Department of Justice. This court should affirm the dismissal of the complaint here, and it should do so because NACA held that district courts have jurisdiction of claims raised by Ms. Cabello Garcia and her punitive class only if they are collateral to individual applications. If they are right, or if there are applicable exceptions to the rightness requirement. And here, none of those factors exist. First, Ms. Cabello Garcia's claim is not collateral. She raises an individual claim based on her individual application. And we know from NACA that when a claim involves an individual application, it cannot be recast as a collateral claim. To do so would be to evade entirely the jurisdictional bar of 1252A2B1. Because Ms. Cabello Garcia's claim must be dismissed for lack of subject matter jurisdiction, the class claims cannot proceed as collateral. This is all from the Ninth Circuit, Lebo versus State Farm Mutual Auto Insurance is the leading case. Because furthermore, she is not typical of the class, because she does not have a collateral claim, but an individual claim, she cannot be the class representative. She was the only class representative in the complaint. And because the class representative here lacks standing, so does the class. And as a result, any collateral claims that the class might seek to bring must also be dismissed. The plaintiffs here have argued that NACA is distinguishable merely as a channeling provision, as opposed to a clear application of the jurisdictional bar set forth at 1252A2B. And that's incorrect, Your Honor. Both in NACA, with the amicus brief submitted by opposing counsel here, as well as in the Eleventh Circuit in Doe, we had a situation where the circuit courts were confronted with a situation where the plaintiffs alleged that 1252A2B1 should not apply to petitions incapable of being channeled to the courts of appeal under 1252A2D. Nonetheless, in both NACA and Doe, the circuit courts held that 1252A2B1 precluded the claims here. Any challenge? Your opposing counsel said in NACA the P. Padada's claim could be reviewed upon a petition for review. Is that not correct? Her claim could be, Your Honor. And here, on a direct review, well, I will say this. Here, Ms. Camilo-Garcia could not renew her petition in the first instance before the integration. So the opposing counsel is correct there. But what I would say in response to that, Your Honor, is that that is a distinction that doesn't matter. And it doesn't matter because having been confronted with that precise scenario in both NACA and Doe, both this court and the Eleventh Circuit held still, they still held that the regardless clause of 1252A2B precludes an individual challenge to an individual denial. I mean, I think your opposing counsel is saying that's a key distinction because if Cabello can't challenge the denial of adjustment of status before the IJ, that's different than P. Padada, who could, in that that should cause us to say that there's jurisdiction in the district court here or at least have to confront a constitutional question about that. So there's three responses to that, Your Honor. The first is that that argument would be the application of a dangerous principle where judges can give the same statutory text, different meanings in different cases. And what do I mean by that? What I mean is that in NACA, the court held that 1252A2B1 applies to preclude review of adjustment decisions made by USCIS outside the context of removal. That's exactly the case here, Your Honor. And NACA was given, the NACA court was given the opportunity to establish a carve-out, just like the Doe court was in the other circuit. And in both cases, they declined to do so. And in doing so, they were consistent with the dicta in Patel from the Supreme Court, where they held that it would be within the realm of likely that Congress intended for exactly such result for no judicial review of discretionary determinations like the adjustment decision at issue here. The second point I'll raise, Your Honor, in addressing this is a question that both you, Judge Bress, and Judge Cain raised below, there is judicial review available before an Article III judge in this case or involving these individuals, the plaintiffs here. And how so? They can, as Your Honor suggested, Judge Bress, challenge the exclusivity provision that precludes currently the plaintiffs from renewing their adjustment decision before an immigration judge. They would do that. They would raise that challenge. They would go to, they would be put in removal proceedings, argue that the exclusivity provision raises perhaps unconstitutional, raises constitutional issues, and then they could, presumably, the immigration judge would deny that motion. And in response to your question, Judge Cain, yes, they could then follow up with a challenge to that ruling in a petition for review that they filed pursuant to 1252 A2D. That is a pathway for judicial review. Because there is a judicial review pathway available to the plaintiffs here, there is no exception to rightness allowing the challenge to be brought in district court. So there's, the plaintiffs, you know, are saying, listen, we believe we should get a review of this one way or the other. Their position is this cannot just simply be unreviewable. And I take it what you're saying is, well, they can try to make that argument essentially in the court of appeals in a petition for review. That would be their mechanism to try to argue that. Yes, Your Honor. That would be their mechanism. They would first argue that the exclusivity provision that precludes them currently from renewing their application for adjustment with an immigration judge must be struck down. And once they receive that ruling, assuming they do, then they can proceed on remand to challenge, to renew their application for adjustment with the immigration judge. And there they can bring the marriage challenge here, which is that USCIS or the government shouldn't be allowed to demand medical examinations. That's the pathway for judicial review here, Your Honor. And I think that addresses both your question, Judge Bress, and your question, Judge Payne. The third point as to constitutionality, Your Honor, is that Ms. Cabello-Garcia does not have a procedural due process right to judicial review. This case involves a discretionary determination of a benefit that is a matter of legislative grace. There's case law that we've cited saying that there are no due process, no constitutional rights to judicial review of such determinations. The plaintiffs have instead focused on an inopposite target. What they've focused on are cases involving removal. But this is not a removal case. Any removal, any threat of removal that the plaintiff faces is purely speculative, and we should lay that aside. Removal cases do implicate due process because they are a constraint on liberty, and they do therefore implicate the suspension clause. And that is why in St. Cyr and in cases following, courts have been careful to preserve a direct pathway for judicial review of removal orders and matters involving removal. But again, that's not the issue here. Here we have a discretionary determination. And if anything, what we should focus on is the right of Congress under the exceptions clause of the Constitution itself to limit judicial review. Justice Jackson in Wilkinson in her concurrence said, when reviewing denials of discretionary relief, courts should respect the choice of Congress reflecting the will of the people to limit judicial interference. I mean, I take it this whole argument is one you think we shouldn't even reach. You think we should be saying here there is a channeling provision that directs you to the removal process and the petition for review process. This would, this already the constitutional, the entitlement to judicial review of the denial of discretionary relief can be raised there, and this would presumably be the defense you would make if it were raised there. But it seems to me to answer, to resolve what you're talking about here, we would first have to get past the channeling issue. Yes, Your Honor, and I believe I've addressed the channeling issue to say that there is a channel available. But even before you reach that question, Your Honor, I wanted to return to a point just to clarify. The class cannot proceed on their collateral claims because there is no, there is no class representative anymore. Ms. Cabello-Garcia's claim must be dismissed because it is an individual claim. And without an individual class representative, withstanding the entire class claim, the collateral claims, the ones that opposing counsel says survive NACA must be dismissed. I mean, one issue obviously is that Cabello, I guess, is not in removal proceedings, and it's not clear when she would be. So she might say, well, I'm, you're asking me to be able to tell me I can maybe raise this later, but we don't know when that will be. Is there a response to that? It's the response in NACA, Your Honor, which is what the majority of the panel in NACA said that Congress, when it created these channeling provisions, yes, it made people wait. It made people bet the farm. NACA uses that phrase. It required them to either leave the country because they're out of status or stay out of status and wait to be put in removal and then to raise their legal arguments then. That's the response there, Your Honor. What's the government's position on who can actually take advantage of the type of collateral claim that NACA envisions in district court? Because on the one hand, it says, well, once you've had your adjustment of status denied, you're outside of that and you're into the channeling. But of course, in NACA, the plaintiffs who hadn't had their claims weren't ripe yet. So where is the space between those two things? That's difficult to say, Your Honor, and it's difficult in part because it's difficult to define what constitutes a collateral claim. What NACA did do was say that collateral claims are, well, individual claims as opposed to collateral claims are those that refer to, those that are referring to or relying on denials. So if you have a claim that refers to or relies on denial, like Ms. Cabello's claim, that is not collateral. What NACA seems to say is that you can have collateral claims and if they are ripe, then they also fall within 1252 A2B and the jurisdictional bar there. So that's a problem for them. The only way for collateral claims to proceed is if, A, they have a legitimate class rep and, B, if they can somehow evade the ripeness requirement that is, A, generally a constitutional requirement but, B, also something that would subject them to the jurisdictional bar of 1252 A2B1. So when you say for the collateral challenge you have to have a typical class rep, they can still challenge it before class certification. They were kind of supposed to do a little pre-certification kind of peekaboo analysis of, you know, adequacy and typicality. Well, I mean, I think you don't need, I think it would be clear from the pleadings, and it is clear from the pleadings here, that adequacy and typicality is missing because under NACA, Ms. Cabello-Garcia lacks standing. And so that's apparent from NACA, and we would ask the court to make that ruling here. But so there is this class of people that NACA envisions as being able to bring collateral claims. They are not people whose adjustment of status has been denied, but they're also not people who haven't taken affirmative steps to seek adjustment of status. So is it, I mean, was there a period in time here which Ms. Cabello-Garcia theoretically had a collateral claim? She would have had to bring it essentially before her claim was denied, but she would have had to do something to move forward with that claim to show that it was right? Well, Your Honor, I think the problem with Ms. Cabello-Garcia is that she's not typical of the plaintiff's own class definition. The class definition that the plaintiffs have raised is that they consist of individuals who have not yet been denied or not yet even applied. So I suppose if Ms. Cabello-Garcia could go back in time not file an adjustment application, she would then be typical of the class. Whether the plaintiffs want to refile, they can, but they cannot do so under this action because they lack a class representative. I mean, let's just say hypothetically, she had, let's just say hypothetically, she had brought this lawsuit before she was denied adjustment of status. Would she be able to get district court review here under the CSS exception in that situation? No, Your Honor, because the CSS exception requires the absence of any legal challenge. And here, as Your Honor, Judge Brest speculated, there is an avenue by which Ms. Cabello-Garcia could have challenged first the exclusivity provision of the statute and the regulation, which currently precludes her from renewing her application before an immigration judge. She would presume she could seek to win that challenge. And if she won that challenge, then she could renew her application for adjustment before an immigration judge. And there, with the immigration judge, she could argue that the requirement that she submit a medical examination is arbitrary and capricious. So, again, she could not satisfy the CSS exception's ripeness because of that channeling. I see I'm out of time, Your Honor. I'm actually over time. So, in summary, Your Honor, just to wrap up, if I may, NACA precludes the individual challenge here brought by Ms. Cabello-Garcia. Because Ms. Cabello-Garcia's claim must be dismissed, there can be no collateral challenges, even if there could be. They are unright, and there are no exceptions to the ripeness requirement because there is a channeling available of a legal question. And finally, even if the court could consider the claims, I didn't get to it, but it's in our briefing, the requirement for a medical examination is rational. And therefore, the plaintiff's claims should be dismissed for failure to state a claim. Great. Thank you. Thank you, Your Honor. Thank you. First, I'd like to address the claim that this is not a collateral challenge just because it's in the context of an individual denial. That's flatly contrary to NACA. There would be no point to finding that Padada could even bring this claim on a petition for review if the court were not continuing to recognize it as a collateral challenge to the policy. Because after all, what is 1252A2B1 in the first place? It's a provision that limits the ability to challenge a discretionary judgment. But here they're saying, even though she got she can still challenge the policy that was the root of that judgment, that was the cause of that judgment, because that policy is the collateral challenge. Similarly, our client is bringing a collateral challenge to the policy, even though that policy resulted in an individual denial. Can you address his point or his claim, your friend's claim that Ms. Cabella Garcia isn't a typical or adequate representative to assert this collateral challenge? Well, first defendants, Aaron, in misstating the class, the class, the proposed class, are those individuals who have applied or will apply. And that's Ms. Cabella. And it doesn't require that they be denied, but it doesn't limit it to folks who have already been denied. So she's certainly an adequate representative of the class. She's presented an application. Every proposed class member is subject to that same policy. The resolution of that question will address all those individuals, whether the application has already been denied or whether it's pending before the court. The other point that I would briefly like to make is that defendants speculate that we could bring a separate constitutional claim to 1255M. But of course, that requires us to go even further down a path of challenging statutes. And that's precisely what the doctrine of constitutional avoidance is about, that in order to avoid those constitutional questions, a statute should be interpreted to alleviate those concerns. And that also dovetails with the presumption of judicial review. And I would just conclude with the Supreme Court's admonition in Kukana that where possible or where feasible, that the statute should preserve that judicial review. And certainly under this court's decision in NACA, which has already determined that the policy can be challenged and only then addresses how it should be channeled, there's an opportunity to interpret the statute that does not require Ms. Caveo and proposed class members to go down this hypothetical winding path where they file a petition for review someday when they're ultimately placed in proceedings where they could not challenge this policy, but instead challenge a separate statute that said that where Congress dictates who adjudicates this particular type of application. And then only then, if they prevail on that, they can get it remanded and start all over. So that's flatly contrary to the doctrine of constitutional avoidance. It flies in the face of the doctrine or presumption of judicial review. And it's inconsistent with this court's holding in NACA. And for these reasons, we would request that the court remand the district court's decision back to the district court and allow plaintiff to proceed forward with their claim that this policy is flatly contrary to the statutory scheme that was created by Congress. Thank you both for the helpful argument. The case has been submitted and we are adjourned. Thank you as court for this session. Stands adjourned.
judges: LEE, BRESS, Kane